Foster, J.
This controversy is submitted upon an agreed statement of facts. It concerns the transfers of petitioners from the New York City Employees’ Retirement System to the New York State Employees’ Retirement System. Prior to September 27, 1943, petitioners were employees of the City of New York and members of the city retirement system. On that date they became State employees, as unemployment insurance referees, and were transferred to the State retirement system. When thus transferred their accumulated contributions and pension reserves in the city system were transferred to the State system. In the case of petitioner Wexner, his contribu *187 tions and interest amounted to $1,667.96, with a pension reserve of $1,248.77; for petitioner Schindler the corresponding amounts transferred were $702.65 and $498.98. Upon entry into the State system both petitioners elected to contribute on the basis of retirement at the minimum age of sixty years. The State system thereupon fixed the rate of contribution in Wexner’s case at 6.21% of his salary, and in Schindler’s case at 6.03% of his salary; and the rate of interest to be paid on these contributions was held to be at 3% per annum, that being the interest rate in effect for those who joined the system after June 30,1943. The rates of contributions were aetuarially fixed upon the basis of petitioners’ respective ages at the time of their transfers. So far as these matters were concerned no consideration was given to tbeir prior membership in the city system.
Petitioners contend generally that their status in the State system should be the same as though they had become members thereof on the respective dates they became members of the city system. Specifically they ask for an order declaring that their contribution rates, and the interest on contributions, should be computed as though they had been members of the State system prior to July 1, 1943, and on the dates of their respective membership in the city system. Those who were members of the State system prior to July 1, 1943, have interest credited upon their contributions at the rate of 4% per annum, and those who became members after that date are only entitled to 3% (Civil Service Law, § 50, subd. 11). If petitioners are correct their rates of contributions, computed upon the basis of their ages when they joined the city system, would be, in the case of Wexner 4.68% instead of 6.21%, and in the case of Schindler 4.68% instead of 6.03%.
The answer to this controversy must rest on the.proper interpretation to be given section 73 of the Civil Service Law, which permits transfers of memberships to the State system from some other retirement system. Before discussing this section, however, it is well to note that the State retirement division has two fundamental divisions: (a) the accumulated contributions of a member, with interest added either at 4 or 3%, depending upon the date of entry, and from which an annuity may be paid; (b) an accumulation of funds contributed by the employer from which a pension, fixed by the member’s final average salary and years of service, may be paid. The combination of an annuity and a pension thus provided for is commonly called a retirement allowance (Civil Service Law, § 63).
*188 The transfer of membership from another system, operating on a sound financial basis and subject to the supervision of the State Insurance Department is .permitted, governed and controlled wholly by the provisions of section 73 of the Civil Service Law. There is no other section dealing with this matter. Speaking of such a transfer this section says: “ Upon his entry into such other system, he shall be- admitted without regard to his previous membership in the first retirement system and without credit for prior service except as hereinafter provided.” (Emphasis supplied.) Thus a transferee to the State system acquires no rights or privileges arising out of his membership in a previous system except those' specifically provided for in the section.
The rights and provisions provided for on transfer are these: (1) the employee is permitted to deposit in the State system, and receive credit therefor, the total amount of his contributions withdrawn from the first retirement system; (2) as to the contributions made by the employer in the first system, these shall be computed actuarially and the result so obtained shall be considered as the pension reserve of the transferee’s account in the first system. When this reserve is transferred to the State system the statute goes on to say that the employée: < £ $ * * shall then be given such status and be credited with such service in the second retirement system as he was allowed in the first retirement system * * * Petitioners construe this languagé to establish their status in the State retirement system both as possible annuitants as well as potential pensioners. This construction would entitle them to the 4% rate of interest on their contributions made after joining the State system although their transfer to this system did not take place until after June 30, 1943; and their rates of contributions would be fixed as if they had been members of the State system from the time they joined the city system. The comptroller has held to the contrary, that they are only entitled to the 3% rate of interest on their contributions made after joining the State system, because their transfers to that system took place after June- 30,1943; and that their rates of contribution must be fixed as of the date of their entry into the State system, based upon mortality tables and the regular rate of interest then in effect, regardless of their previous service in the city system. We believe the comptroller’s construction. is correct. The language upon which petitioners rely as to their “ status ” refers simply to the pension reserve transferred from the first *189 system to the second. It simply means, as related to petitioners,' that for pension purposes they must be allowed credit for their actual years of service in the prior system, and no more. It has nothing to do with an annuity fund.
A comparison of this part of the section, as it read prior to 1931, and its present wording, supports this assertion. Prior to the amendment of 1931 (L. 1931, ch. 299), it provided that upon a transfer of a pension reserve a member should “ then be given such status and be credited with such service in the second retirement system as shall impose a liability on that system in addition to the liability which it would otherwise undertake equal to the reserve so transferred.” (L. 1926, ch. 684.) Under that former provision, and for pension purposes, allowance to the transferee for previous service was limited to the actuarial equivalent of the pension fund transferred, and credit was not necessarily given for the actual years of service. Under the present provision the actual years of service are allowed irrespective of the size of the pension reserve transferred.
As to the rate of contributions to be made by petitioners to the annuity fund after joining the State system, and the interest to be paid thereon, the section is silent. Since these matters are not covered by the section it is only logical to conclude that as to them the transferee is to be regarded as a new entrant. And, moreover, there is the limiting sentence, previously quoted, to the effect that one transferring to the State system shall be admitted without regard to previous membership in the first retirement system, and without credit for prior service except as provided for. It follows that the general scheme otherwise embodied in the statutó must control, and under this a person does not become a member of the State system until his actual entry, and the applicable contributions and interest rates thereafter to be paid must be determined in each case as of the date of his membership. This construction has been followed as a matter of uniform practice by the authorities administering the State system for many years, and such an established practice must be given considerable weight in appraising the language of the section relied on.
Such an interpretation is also somewhat fortified by a reading of section 53 of the Civil Service Law. Under that section, paragraph (c) of subdivision 5, a person may become a member of the State system who is not a member of any actuarially sound retirement system but who has previous allowable service. To *190 get credit for such previous service he must make contributions therefor, that is, he must make back payments; but in such a case his future rate of contribution and the interest to be paid thereon is nevertheless fixed as of the date he joins the system. It is significant that the privilege thus accorded is not available under this section to one who has the privilege of a transfer from some other retirement system under section 73. The reason for such denial is apparently this: if a member of another system was permitted to join the State system under section 53 there would be no requirement for the transfer of his pension reserve from the first system, and the State system would lose the benefit thereof. Otherwise there would be no distinction between a transferee -with allowable back service and a new entrant with the same kind of service, except that in lieu of making back payments to the annuity fund the transferee would simply transfer his annuity fund from the first system to the second. The apparent purpose of section 73 was to obtain for the State system the benefit of the pension reservo accumulated on the member’s behalf in another system. That purpose is accomplished by denying the benefits of section 53 to any person to whom the transfer privilege under section 73 is available. But so far as future contributions to the annuity branch of the system is concerned, and the interest to be added thereto, both a new entrant and a transferee stand on the- same footing. These matters are to be determined as of the date of membership in the State system.
The proceeding should be dismissed, without costs.